UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEHNS GONCALVES,

                                                   Civil Action No. 14-11384

        Plaintiff,                       Honorable Denise Page Hood

v.

DAVID TRAKUL and JOHN DOE,

        Defendants.

_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [#3]

Before the Court is Plaintiff's Motion for Preliminary Injunction, captioned "Ex Parte Motion for Temporary Restraining Order *and Preliminary Injunction*," requesting that the Court enjoin Defendants from requiring that Plaintiff undergo a "proposed medical examination." **[Docket No. 3, filed April 4, 2014]** On April 4, 2014, the Court entered an Order granting Plaintiff's Motion for Temporary Restraining Order and set a hearing for the instant motion. **[Docket No. 7]** Defendants filed a Response to Plaintiff's Motion on April 4, 2014. **[Docket No. 4]** On April 10, 2014, Plaintiff's Counsel filed a Motion for Extension of Time to File a Reply which Plaintiff filed on April 21, 2014. **[Docket No. 11]**

1

## I.    BACKGROUND

As stated in the Court's April 4, 2014, Order, this case involves an alleged

violation of Plaintiff's Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C.

§ 1983 *et seq.*, based on an alleged "unlawful search of his person in the form of a

proposed mental health examination" (Section 1983–Unlawful Search-Count I) as

well as Plaintiff's state law claim of statutory discrimination pursuant to Michigan's

Persons  With  Disabilities  Civil  Rights  Act,  M.C.L.  37.1101  *et  seq.*

(Discrimination–Disability  under  the  Michigan's  Persons  with  Disabilities  Civil

Rights Act-Count II).  **[Docket No. 1, Pg ID 1]**  Plaintiff is employed by Eastern

Michigan University ("EMU") as the Assistant Director of its Disability Resource

Center ("DRC"), which provides services to students with disabilities at EMU.

**[Compl., pg. 1 & ¶ 6]** Defendant David Trakul is the Director of Employee Relations

and Policy of EMU. **[Compl., ¶ 3]**

Plaintiff contends that on March 13, 2014, Defendant Trakul placed him on an

unrequested paid administrative leave. **[Compl., ¶ 8]** On March 26, 2014, Defendant

Trakul verbally informed Plaintiff that Plaintiff was to report for an examination by

a psychiatrist on March 31, 2014. **[Comlp., ¶ 11)]** Plaintiff's counsel objected to the

proposed examination to EMU's General Counsel on March 27, 2014. **[Compl., ¶ 18]**

On  March  31,  2014,  prior  to  a  meeting  between  Plaintiff's  counsel  and  EMU's

General Counsel, Plaintiff was informed by voice-mail that the examination had been rescheduled for Monday, April 7, 2014. **[Compl., ¶ 20]** Plaintiff believes he was placed on paid administrative leave because he forwarded an email on March 13, 2014, from the President of the Association of Higher Education and Disabilities ("AHEAD") to Lieutenant Dan Karrick of EMU's police department. **[Compl., ¶¶ 52–54]** The AHEAD email addressed violence on campuses and contained a link to an online article published by a women's magazine concerning violence, with a focus on gun violence incidences on college campuses. **[Compl., ¶ 13]** In his email, Plaintiff asked Lieutenant Karrick if it would be prudent to remind faculty, staff, and students of EMU's policy regarding guns on campus. **[Compl., ¶ 54]**

Plaintiff states that he met with EMU Vice President Dave Turner on March 13, 2014, and was instructed to communicate within the chain of command regarding this issue. **[Compl., ¶ 56]** Plaintiff then forwarded the email to his supervisor, Mr. Randall Ward, and two other co-workers at the DRC. **[Compl., ¶ 58]** Mr. Ward indicated that the DRC would not be sending out a reminder. **[Compl., ¶ 59]** Plaintiff claims that later that afternoon he was placed on administrative leave and escorted from campus. **[Compl., ¶ 61]** Plaintiff asserts that but for forwarding the AHEAD email, he would not have been placed on administrative leave. **[Compl., ¶ 61]** In the March 17, 2014, letter placing Plaintiff on administrative leave, Defendant Trakul

wrote, "In addition, you most recently contacted the Department of Public Safety and your supervisor and asked them whether we would consider reminding all faculty and staff about our campus weapons policy and included articles about the number of persons killed by gun violence on college campuses. This focus on violence is concerning." **[Compl., ¶ 62]** Plaintiff claims that forwarding the AHEAD email does not indicate in any way that he is unfit for duty or that EMU has any reasonable suspicion to require Plaintiff to undergo a psychiatric evaluation. **[Compl., ¶ 68]**

In their Response, Defendants state that since January 6, 2014 (the date that Randall Ward began working as the Director of the Students with Disabilities Office), Plaintiff has taken "increasing action to disrupt Ward's service." **[Docket No. 4]** Defendants argue that on February 7, 2014, Plaintiff and another employee attacked the search process that led to Ward's hire by stating in a signed e-mail to the University Regents (the governing board), University President Susan Martin, and University Provost Kim Schatzel that the job was promised to Ward before it was even posted. Defendants assert that on February 18, 2014, Plaintiff filed a police report against Ward after Ward put his hand on Plaintiff's shoulder when he stopped by to say hello. Defendants contends that on February 27, 2014, Plaintiff asked to have a police dog check his office for illegal substances after Ward had been in his office area. Plaintiff's message to safety officer Lt. Dan Karrick stated:

4

> Mr. Randall has several police reports filed against him. I
> am concerned about his taking or placing anything into my
> office when I am not there. Will you please have someone
> investigate what he did with whatever he removed off my
> computer? Then, have that confiscated, sealed and kept
> away from DRC?
>
> I want to talk with you, please, about the police report I
> filed and ask that it be formally investigated as an assault.
> I will consult with an attorney to see what my rights are as
> I am concerned about Mr. Ward's ethics and motivation. If
> possible I would like to have a police dog come and check
> the office for any illegal substance. I fear for my safety and
> my health.

**[Docket No. 4, Exhibit 5]**

Defendants state that Plaintiff made additional reports against Ward including

a report accusing Ward of "attempting to poison him by contaminating the carpet with

some type of irritant or illegal substance." **[Docket No. 4, Pg ID 41]** In this report,

Plaintiff requested that a sample of his carpet be tested, stating "fears for [his] safety

and[his] health." **[Docket No. 4, Exhibit 6]** On March 11, 2014, Plaintiff reiterated

his fears to a public safety officer, stating that Ward's patting him on the back

"reminded [him] how the San Francisco 49ers coach Jim Harbaugh inappropriately

patted Jim Schwarts [sic] ex-Detroit Lions coach after a game last year." **[Docket No.**

**4, Exhibit 7]** Defendants admit that on March 17, 2014, Defendant Trakul sent

Plaintiff a letter indicating that Plaintiff had been placed on administrative leave, with

5

pay, pending a fitness for duty examination.  **[Docket No. 4, Exhibit 9]**  Plaintiff was

advised,

> You have taken a series of actions that have led us to
> question your fitness to be in the workplace.  Among them
> are continued expressions of fear for your safety as it
> relates to your supervisor that are not grounded in fact.
> You have expressed fear that he is improperly removing
> items from your office, that he has placed substances in
> your office that are making you ill, and that a routine pat on
> the shoulder was a criminal assault.  In addition, you most
> recently contacted both the Department of Public Safety
> and your supervisor and asked them whether we should
> consider reminding all faculty and staff about our campus
> weapons policy and included articles about the number of
> persons killed by gun violence on college campuses.  This
> focus on violence is concerning.

**[Id.]**  Plaintiff's fitness for duty examination was scheduled for Monday, April 7,

2014, with Dr. Craig Lemmon.

## II.    DISCUSSION

Plaintiff moves this Court for a preliminary injunction enjoining Defendants

from completing what they have deemed a required fitness for duty examination.  The

Supreme Court and the Sixth Circuit have noted that "[t]he purpose of a preliminary

injunction is merely to preserve the relative positions of the parties until a trial on the

merits can be held."  *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *Six

Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 400 (6th Cir. 1997).

The Sixth Circuit, however, has advised that "[a] preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it."  *Overstreet v. Lexington–Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citation omitted).  Additionally, this "extraordinary" remedy "should best be used sparingly." *Jerome–Duncan, Inc. v. Auto–By–Tel, L.L.C.*, 966 F. Supp. 540, 541 (E.D. Mich. 1997) (citations omitted).  For the reasons discussed below, the Court concludes that Plaintiff has not shown that this situation merits the extraordinary preliminary injunction remedy.

When ruling on a motion for a preliminary injunction, a district court must consider and balance four factors: (1) whether the moving party has a strong likelihood of success on the merits; (2) whether the moving party would suffer irreparable injury without the preliminary injunction; (3) whether issuance of the preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the preliminary injunction.  *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003) (citation omitted).  These four factors "are factors to be balanced, not prerequisites that must be met." *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 230 (6th Cir. 2003) (citation omitted).  In general, to obtain a preliminary injunction, the injury that would result in the absence

of the injunction must be irreparable, not merely substantial. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974).

### A. Likelihood of Success on the Merits

The Court examines Plaintiff's likelihood of success on the merits. "When a party seeks a preliminary injunction on the basis of a potential constitutional violation, the likelihood of success on the merits will often be the determinative factor." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir.2012) (citing *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009)). "[A] plaintiff must demonstrate a strong or substantial likelihood or probability of success." *United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 35 (6th Cir. 1992). A likelihood of success is not sufficient to meet this standard; Plaintiff must demonstrate that the likelihood is "substantial."

Here, based on the facts currently before the Court, Plaintiff has not shown that he will succeed on the merits of his constitutional claims. Plaintiff claims a violation of his Fourth Amendment rights based on illegal search and seizure and what is assumed to be a due process violation pursuant to the Fourteenth Amendment. Defendants note that Plaintiff is "represented by the Professional Technical bargaining unit of the UAW." Plaintiff states that the determination to have him submit to a fitness for duty evaluation was one made by his employers, even though Defendants have not pointed to or cited to any specific policy at EMU or by the UAW that gives

them the authority to do so, relying on the ADA. Specifically, Plaintiff contends that

EMU is demanding the medical exam "without the benefit of any apparent formal or

developed procedures." **[Docket No. 3, Pg ID 25]** Plaintiff asserts that there has been

no indication to him

> regarding controls over how the decision to order the exam
> was reached, who participated in the decision, how the
> health care professional was selected, what information is
> being provided to the health care professional, who is
> screening that information for objective accuracy, what
> form of report or information is anticipated in return, who
> will review the report and what their professional
> qualifications are for interpreting such reports, and how the
> information in any report will be used to determine [his]
> overall fitness for duty.

**[Id.]** Further, Plaintiff states that "there are no apparent safeguards for maintaining

the privacy of the information" and that EMU has "already disclosed the fact of the

examination to UAW officials without seeking [his] consent." **[Id.]**

Defendants cite to *Gargiul v. Tompkins*, 790 F.2d 265, 267 (2d Cir. 1986), to

support their argument that "courts have held that public employers may require

employees to undergo independent medical examinations without Constitutional

violations in a variety of contexts." **[Docket No. 4, Pg ID 46]** There, a teacher who

had taken extended sick leave due to a back ailment sought to return to work and was

ordered to go to the school district physician for a physical examination. The teacher

9

refused and was suspended without pay effective until the doctor could determine her physical fitness to resume her teaching duties.   The teacher appealed and the Commissioner dismissed her appeal because "N.Y. Educ. Law § 913 (McKinney Supp. 1984) explicitly empowered the Board to require her to submit to a physical examination to certify her fitness."  *Id.* at 267.

Following the Commissioner's determination to dismiss her appeal, Gargiul applied to reopen the Commissioner's decision on the ground that her constitutional right of privacy permitted her to refuse to be examined by a physician of the opposite sex.   In the period between the Commissioner's original decision and the Commissioner's decision not to reopen the proceedings, Gargiul initiated an Article 78 proceeding against the Board to challenge her suspension without pay which was dismissed by the State Supreme Court as time-barred under N.Y. Civ. Prac. Law & R. § 217.  The Appellate Division affirmed the dismissal, ruling that the suit was time-barred and that the due process claim lacked merit.  *See Gargiul v. Board of Education*, 54 A.D.2d 1085, 389 N.Y.S.2d 504 (1976), *leave to appeal denied*, 41 N.Y.2d 802, 362 N.E.2d 627, 393 N.Y.S.2d 1026 (1977).  The United States District Court for the Northern District of New York dismissed her civil rights action challenging the denial of suspension pay.  The Second Circuit Court of Appeals held that a ruling of a New York appellate court affirming the dismissal of her claim as

time barred precluded, under the doctrine of res judicata, her challenge to the denial

of suspension pay.  The Court notes that in *Garguil*, there was a state statute which

allowed for such testing.

Defendants also rely on *Yin v. State of California*, 95 F.3d 864 (9th Cir. 1996),

*cert. denied*, 519 U.S. 1114 (1997).  In *Yin*, a California state employee sued the state

pursuant to the Americans with Disabilities Act challenging the state's requirement

that she submit to an independent medical examination ("IME").  The Ninth Circuit

Court of Appeals determined that: (1) the employee had standing to bring an ADA

challenge; (2) the ADA did not preclude the state from requiring the employee to

undergo an IME; (3) the examination was job-related; (4) the IME did not violate the

Fourth Amendment under the balancing test for "special needs" cases; (5) no search

warrant was required; (6) the employee had legitimate expectation of privacy in being

free from unwanted medical examination; and (7) the requirement that the employee

submit to an IME served a substantial government interest."  *Id.*

Additionally, Defendants cite *Owusu-Ansah v. Coca-Cola Co.*, 715 F.3d 1306

(11th Cir. 2013), *cert. den.*, 134 S. Ct. 655 (2013).  In *Owusu-Ansah*, a call center

employee who had been placed on paid leave after allegedly making threats against

other employees, and who had been required to undergo a psychiatric/psychological

fitness-for-duty evaluation before returning to work, filed suit against his employer

for violation of the Americans with Disabilities Act.  The United States District Court for the Northern District of Georgia granted the employer's motion for summary judgment and the employee appealed.  The Court of Appeals for the Eleventh Circuit determined that the evaluation was both "job-related and consistent with business necessity" and was therefore valid under § 12112(d)(4)(A).

Defendants chiefly rely on the ADA statute for its position that they can require Plaintiff to undergo the fitness for duty examination.  Defendants cite to 42 U.S.C. § 12112(d)(4)(A)[1] (stating that "[a] covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.").  In his response, Plaintiff states that he has "not asserted an ADA claim." Plaintiff has, however, made a Michigan Person with Disabilities Civil Rights Act ("PWDCRA"), M.C.L. § 37.1101, *et seq.*, claim.  Michigan Courts have noted that the federal Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and the PWDCRA "share the same purpose and use similar definitions and analyses, [both the Federal and State] courts have relied on the ADA in interpreting the PWDCRA."  *Chiles v. Mach. Shop, Inc.*, 238 Mich. App. 462, 472, 606 N.W.2d 398, 405 (1999).

---

[1]  The Court assumes Defendants mean (d) and not (c).

The Court notes that § 12112(d)(4)(A) protects employees who are not disabled. *See Kroll v. White Lake Ambulance Auth.*, 691 F.3d 809, 816 (6th Cir. 2012) ("The importance of § 12112(d)(4)(A) in preventing discrimination is underscored by the fact that, in contrast to many other provisions of the ADA, all individuals—disabled or not—may bring suit in aid of its enforcement."). Plaintiff has failed to show how the examination that Defendants request is not in compliance with ADA requirements, specifically, that the examination is not "job-related" and not a "business necessity." Because Plaintiff has not shown a likelihood of success on the merits, this fact weighs in favor of denial of the Motion for Preliminary Injunction.

### B.    Possibility of Irreparable Injury

A specific finding of irreparable injury to the movants is the single most important prerequisite that the Court must examine when ruling upon a motion for a preliminary injunction. *Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983); *Warner v. Central Trust Co., N.A.*, 715 F.2d 1121 (6th Cir. 1983). An injury is not irreparable "if it is fully compensable by money damages." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992); *see also* Black's Law Dictionary, at 789–90 (7th ed. 1999). The Supreme Court has stated that,

> [t]he key word in this consideration is *irreparable.* Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not

> enough.  The possibility that adequate compensation or
> other corrective relief will be available at a later date, in the
> ordinary course of litigation, weighs heavily against a claim
> of irreparable harm.

*Sampson*, 415 U.S. at 90 (emphasis in original, internal quotation and citation omitted).  The absence of irreparable injury would end this Court's inquiry. *Aluminum Workers Int'l Union v. Consolidated Aluminum Corp.*, 696 F.2d 437, 444 (6th Cir. 1982); *Detroit Newspaper Publishers Ass'n v. Detroit Typographical Union*, 471 F.2d 872, 876 (6th Cir. 1972).

Here, it appears to the Court that, based on the invasiveness of requiring mental evaluation, Plaintiff can make an adequate argument that irreparable injury may occur. Plaintiff argues that the testing is not necessary and violates his Fourth and Fourteenth Amendment rights.  When Fourth Amendment (such as unreasonable searches and seizures) and Fourteenth Amendment rights are at stake, "the loss of constitutional rights, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Ramirez v. Webb*, 1986 WL 16752 at *2 (6th Cir. Mar. 3, 1986) (unpublished).

The Court notes that in addition to equitable relief, Plaintiff seems to put a dollar amount on his overall claim.  Plaintiff requests a judgment for any lost wages and benefits, should Plaintiff be found entitled to front pay, in whatever amount he is

14

found to be entitled, compensatory damages in whatever amount he is found to be entitled, punitive and exemplary damages commensurate with the wrong and Defendant's ability to pay, and an award of interest, costs, and reasonable attorney fees. **[Docket No. 1, Pg ID 15]**   Though Plaintiff makes a claim for monetary damages, if the "*nature* of plaintiff's loss would make damages difficult to calculate," then an injury is not "fully compensable by money damages." *Basicomputer Corp.*, 973 F.2d at 511 (emphasis added).  The Court notes that this does not mean that whenever monetary damages are difficult to calculate the injury is irreparable but rather that the very "nature" of the loss must be inherently difficult to calculate. *Id.* Finding that Plaintiff's claims are in the nature of constitutional violations making it difficult to calculate monetary damages, the Court determines that irreparable injury may occur based on Plaintiff's constitutional claims and this factor favors Plaintiff's request.

As to Plaintiff's disability discrimination claim pursuant to the Michigan Person with Disabilities Civil Rights Act, M.C.L. § 37.1101, *et seq.*, it unlikely that Plaintiff has shown a case of irreparable injury.   To establish a prima facie case of discrimination under the PWDCRA, a plaintiff must establish: 1) that he is disabled as defined by the PWDCRA; 2) that the disability is unrelated to his ability to perform the duties of his particular job; and 3) that he was discriminated against in one of the

15

ways described in the statute.  *Peden v. City of Detroit*, 470 Mich. 195, 204, 680

N.W.2d 857 (2004).  As previously stated, the federal Americans with Disabilities

Act, 42 U.S.C. § 12101 *et seq.*, and the PWDCRA "share the same purpose and use

similar definitions and analyses, and both courts have relied on the ADA in

interpreting the PWDCRA." *Chiles* , 238 Mich. App. at 472, 606 N.W.2d at 405.

Plaintiff's PWDCRA claim relies on the premise that Defendants have

discriminated against him "by conditioning the terms and conditions of his

employment on an unnecessary medical examination." **[Id. at 14]** This claim is more

likely to be sufficiently remedied by monetary damages.  Plaintiff's claim for loss of

salary amounts based on the Defendants' conditioning his return to work on the

"fitness for duty evaluation" can be quantified based on the number of hours he has

had to be (or will have to be in the future) without pay.  This claim does not rise to the

level necessary to grant injunctive relief as there are adequate remedies at law for

Plaintiff's alleged injury pursuant to the PWDCRA.

### C.    Substantial Harm to Others and Public Interest

In evaluating whether substantial harm to others may exist, the Court may also

consider potential harm to the Defendants.  *Ramik v. Darling Int'l, Inc.*, 161 F. Supp.

2d 772, 778 (E.D. Mich. 2001) (citation omitted).  Defendants would arguably be

adversely affected by an injunction insofar as it would either allow Plaintiff to

continue to remain on paid leave indefinitely or allow Plaintiff to return to work in a state-of-mind that Defendants deem to be hazardous to the school community.  The Court concludes that issuing an injunction in this case may cause substantial harm to others.  For the same safety concerns, the Court determines the public interest may also be negatively affected by issuing an injunction in this case.

## III.   CONCLUSION

Accordingly, for the reasons set forth above, the Court having determined that a preliminary injunction is not warranted at this juncture,

**IT IS ORDERED** that Plaintiff's Motion for Preliminary Injunction **[Docket No. 3, filed April 4, 2014)** is **DENIED**.  An appropriate Protective Order shall be agreed to by the parties to protect Plaintiff's right relative to the proposed medical examination.

**IT IS FURTHER ORDERED** that the results of this evaluation not be placed in Plaintiff's personnel file at this time.

**IT IS FURTHER ORDERED** that the Court need not address a security requirement set forth in Fed. R. Civ. P. 65(c).

**IT IS SO ORDERED**.


S/Denise Page Hood
Denise Page Hood

United States District Judge

Dated:  June 13, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 13, 2014, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager